ROY INNIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Innis v. Commissioner
Docket No. 550-83.
United States Tax Court
T.C. Memo 1986-496; 1986 Tax Ct. Memo LEXIS 109; 52 T.C.M. (CCH) 715; T.C.M. (RIA) 86496; September 30, 1986. Raymond C. Leffler, for the petitioner. John Becker, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated October 15, 1982, respondent determined deficiencies and additions to tax under section 6653(b)[1] as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b) [2]
1975
$16,342
$ 8,171
1976
$39,659
$19,830
The petition was *110 timely filed on January 7, 1983, and respondent's answer thereto was filed on March 9, 1983. Pursuant to the requirements of Rule 37, petitioner filed a reply to respondent's answer in which he denied the basis for the deficiency and the determination of fraud. After a concession, [3] the issues for our consideration are (1) whether petitioner Roy Innis is liable for the 50 percent addition to tax pursuant to section 6653(b) for taxable years 1975 and 1976; and (2) whether the assessment of the deficiencies for taxable years 1975 and 1976 is barred by the statute of limitations prescribed by section 6501(a). FINDINGS OF FACT At the time he filed his petition, Roy Innis resided in New York, New York. *111 Petitioner was married to Doris Innis during the years in issue. On October 18, 1984, respondent served petitioner's counsel with a Request for Admissions under Rule 90. No response was received with respect to this request for admissions. Respondent subsequently filed, on December 19, 1984, motions for leave to file motion for order compelling petitioner to (1) answer respondent's interrogatories and (2) respond to the request for the production of documents or to impose sanctions.Pursuant to Rule 104(a) and (b), respondent also moved for an order compelling petitioner to respond to respondent's interrogatories and request for production of documents or impose sanctions. The case was thereafter calendared for trial before the Court on January 7, 1985, at New York, New York.At that time the Court noted that because petitioner filed no response to respondent's request for admissions, under Rule 90(c)[4] the material facts stated in respondent's request for admissions were deemed admitted. [5] The Court also granted respondent's motions and imposed sanctions under Rule 104, thus prohibiting petitioner from offering evidence relevant to the deficiency issue. A trial was then conducted *112 on the issue of the imposition of the additions to tax under section 6653(b) for fraud. *113 Thereafter, on March 18, 1985, the Court afforded the parties an opportunity to show cause with respect to respondent's motions under Rule 104. Noting that the deemed admissions established the same information as that sought in the discovery requests, the Court vacated the Court's oral order granting respondent's two motions seeking the imposition of sanctions, declaring them to be moot. The Court ordered that respondent show cause as to why an order should not be issued declaring the motions moot and that petitioner show cause as to why the Court should not decide the case without reopening the record. Following the hearing, the order to show cause was discharged and respondent's motions were found to be moot in light of the facts which were deemed admitted under Rule 90(c). Respondent's Request for Admissions, which are deemed admitted due to petitioner's failure to respond, and which we incorporate into our findings of fact, are set forth in pertinent part as follows: 2. During the taxable year 1975 you received cash payments in the nature of advances in the amount of $8,780.00 from the Congress of Racial Equality (hereinafter referred to as C.O.R.E.) which went for your *114 personal use. 3. During the taxable year 1975 you received travel expenses from C.O.R.E. in the amount of $18,446.00 for a personal trip made by you and others to Uganda, Africa. 4. During the taxable year 1975 your personal residence was located at apartment 6E at 800 Riverside Drive in New York City. 5. During the taxable year 1975 C.O.R.E. paid $2,300.00 in rental payments for apartment 6E at 800 Riverside Drive in New York City. 6. During the taxable year 1976 you received cash payments in the nature of advances in the amount of $12,211.00 from C.O.R.E. which went for your personal use. 7. During the taxable year 1976 you received travel expenses from C.O.R.E. in the amount of $1,725.00 for personal trips made by you and/or your family to St. Thomas, Virgin Islands, Los Angeles, California, Atlanta, Georgia, and other places. 8. During the taxable year 1976 your personal residence was located at apartment 6E at 800 Riverside Drive in New York City. 9. During the taxable year 1976 C.O.R.E. paid $2,000.00 in rental payments for apartment 6E at 800 Riverside Drive in New York City. 10. During the taxable year 1976 C.O.R.E. made expenditures by check totaling *115 $27,755.00 for your personel expenses for jewelry, clothing, furniture, fight tickets, rental of an apartment at 1380 Riverside Drive, and other personal items. 11. During the taxable year 1976 C.O.R.E. made expenditures by check, labeled "Special Projects," totaling $8,635.00 for your personal expenses for jewelry, furniture, clothing, and automobile. 12. During the taxable year 1976 C.O.R.E. made expenditures, through American Express, totaling $4,902.00, for your personal expenses for restaurants, hotels and entertainment. 13. During the taxable year 1976 C.O.R.E. made expenditures, through a United Airlines charge account, totaling $2,965.00 for your personal expenses for trips taken by Doris Innis. 14. During the taxable year 1976 C.O.R.E. made expenditures, through Carte Blanche, totaling $2,415.00 for your personal expenses. 15.During the taxable year 1976 C.O.R.E. made other payments totaling $17,461.00 for your personal expenses for automobile and a housekeeper, and to you and Doris Innis directly. 16. You were reimbursed by C.O.R.E. for $1,055.00 of the amount claimed as unreimbursed employee business expenses on your 1975 tax return. 17. You were reimbursed *116 by C.O.R.E. for $2,688.00 of the amount claimed as unreimbursed employee business expenses on your 1976 tax return. 18. C.O.R.E. paid an additional $2,730.00 on your behalf which was not for employee business expenses, and which is income to you for the taxable year 1976. 19. You do not have substantiation as to amount, business purpose, or whether they are ordinary and necessary, for the miscellaneous deductions claimed on your 1975 tax return. 20. You do not have substantiation as to amount, business purpose, or whether they are ordinary and necessary, for the miscellaneous deductions for telephone ($1,500.00) and for business lunches ($2,183.00) claimed on your 1976 tax return. 21. You did not keep a diary of business travel and entertainment expenses for C.O.R.E., or for yourself, for the taxable years 1975 and 1976 as required by I.R.C. § 274(d). In 1976, Aaron Rubin, an associate accountant with the New York State Attorney General's office, performed an audit of CORE and CORE-SPF. This audit included a portion of the taxable year 1975 and the full tax year of 1976. The results of the audit revealed that there was a misappropriation of *117 CORE and CORE-SPF funds by various individuals and that some of the funds were misappropriated for the personal benefit of petitioner Roy Innis. [6] Subsequently, the case between CORE and the New York State Attorney General's office was settled. As part of the settlement of that case, petitioner agreed to contribute $35,000 to CORE to make up the irregularities uncovered by the audit. OPINION The amount of the deficiencies in petitioner's Federal income tax for 1975 and 1976 have been established by the facts which stand admitted.Thus, we find that there are deficiencies for the years and in the amounts noted above. Section 6653(b)(1) provides: If any part of any underpayment (as defined in subsection (c) of the tax required to be shown in a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. Respondent has the burden of proving fraud by clear and convincing evidence. Sec. *118 7454(a) and Rule 142(b); Gilday v. Commissioner,62 T.C. 260, 262 (1974); McGee v. Commissioner,61 T.C. 249, 257 (1973), affd. 519 F.2d 1121 (5th Cir. 1975); Otsuki v. Commissioner,53 T.C. 96, 105 (1969); Miller v. Commissioner,51 T.C. 915, 918 (1969). Fraud is a question of fact to be determined on consideration of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). The necessary fraudulent intent may be inferred from circumstantial evidence such as proof of conduct calculated to mislead or conceal. Beaver v. Commissioner,55 T.C. 85, 93 (1970); Pigman v. Commissioner,31 T.C. 356 (1958). It is not necessary for respondent to prove how much of the underpayment for a particular year was due to fraud since the addition to tax under section 6653(b) applies to every year for which any portion of an underpayment is due to fraud. Drybrough v. Commissioner,238 F.2d 735 (6th Cir. 1956); Smith v. Commissioner,32 T.C. 985 (1959). *119 Direct evidence of fraud is seldom available. Furthermore, this Court has consistently held that deemed admissions can support the civil fraud addition. Rechtzigel v. Commissioner,79 T.C. 132, 141 (1982), affd. per curiam, 703 F.2d 1063 (8th Cir. 1983); Doncaster v. Commissioner,77 T.C. 334, 337 (1981). [7] See also Marshall v. Commissioner,85 T.C. 267 (1985). It has been established, through the deemed admissions, that petitioner misappropriated large amounts of CORE or CORE-SPF funds for his personal use over a two-year period. In each of the years at issue, petitioner underreported this income. Courts have frequently observed that such consistent understatement of substantial amounts of income is persuasive evidence of fraud. Shaw v. Commissioner,27 T.C. 561, 573 (1956), affd. 252 F.2d 681-683 (6th Cir. 1958). Deemed admissions also show that petitioner failed to keep adequate books and records. This failure to maintain adequate records may be used to support a finding of fraud. Woodham v. Commissioner,256 F.2d 201 (5th Cir. 1958), affg. a Memorandum *120 Opinion of this Court; Parsons v. Commissioner,43 T.C. 378 (1964). At trial, other evidence was presented which further supports our conclusion that petitioner is liable for the civil fraud addition. Specifically, Aaron Rubin, of the New York State Attorney General's Office, testified that petitioner received some of the funds misappropriated from CORE and CORE-SPF in 1976 and part of 1975 and that these funds were used for petitioner's personal benefit. See Lowy v. Commissioner,262 F.2d 809 (2d Cir. 1959). Additionally, the testimony of Benjamin Hadnott, petitioner's accountant, establishes that it was petitioner who supplied the information to be put on his tax returns by way of a check-list and the accountant relied upon such information to be accurate. Such conduct was designed to mislead or *121 conceal and is an indication of fraud. Beaver v. Commissioner,supra;Pigman v. Commissioner,supra.
Accordingly, we find that the deemed admissions, supplemented by testimony at trial, conclusively establish fraud. Thus, there are additions to tax owed by petitioner in the amounts set forth above. Finally, petitioner has asserted that the statute of limitations bars assessment of the deficiencies. However, because fraud has been conclusively established, the statute of limitations does not apply. Sec. 6501(c)(1). Accordingly, respondent's notice of deficiency was timely. To reflect the concession and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references herein are to the Internal Revenue Code of 1954, as amended and in effect during the tax years in issue, and all Rule references, unless otherwise noted, are to the Tax Court Rules of Practice and Procedure. ↩
2. Although petitioner filed joint tax returns for the years in issue, additions to tax under section 6653(b)↩ were determined solely against Roy Innis.
3. At trial, respondent conceded a $2,000 adjustment in income for taxable year 1976.↩
4. Rule 90(c) provides in pertinent part as follows: Each matter covered by the request for admission is deemed admitted unless, within 30 days after service of the request or within such shorter or longer time as the Court may allow, the party to whom the request is directed serves upon the requesting party (i) a written answer specifically admitting or denying the matter involved in whole or in part, or asserting that it cannot be truthfully admitted or denied and setting forth in detail the reasons why this is so, or (ii) an objection, stating in detail the reasons therefor. The response shall be signed by the party or his counsel, and the original thereof, with proof of service on the other party, shall be filed with the Court. A denial shall fairly meet the substance of the requested admission * * *. Any matter admitted under this rule is conclusively established unless the Court on motion permits withdrawal or modification of the admission * * *. ↩
5. We note, as we did at trial, that it is unfortunate that petitioner and his counsel elected not to answer respondent's request for admissions. This Court does not like to deny a petitioner an opportunity to present his case, particularly in situations involving a fraud addition.↩
6. The amounts asserted as unreported income to petitioner are less than the total amounts of the appropriated funds discovered by Mr. Rubin's audit.↩
7. Starks v. Commissioner,T.C. Memo. 1986-77; Wynne v. Commissioner,T.C. Memo. 1982-572; Pimbley v. Commissioner,T.C. Memo. 1982-103; Reynolds v. Commissioner,T.C. Memo. 1977-181, all cases holding that admissions under Rule 90↩ may be used to sustain the fraud addition.